# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

SHAQUANA BROOKINS,

    Plaintiff,

v.                                              Case No. 4:21-cv-353-MW/MJF

ERICA STRONG,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Shaquana Brookins, a federal prisoner proceeding *pro se*, has filed an amended complaint under 28 U.S.C. §§ 1331, 1346, and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Doc. 18. Brookins claims that Erica Strong, the Warden of FCI-Tallahassee, denied her access to TRULINCS email and video services, in violation of her constitutional rights. The undersigned recommends that this action be dismissed under 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.[1]

## I. ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Brookins is an inmate of the Federal Bureau of Prisons ("BOP") currently confined at the Federal Correctional Institution in Tallahassee, Florida ("FCI-Tallahassee"). Doc. 18 at 2.[2] Brookins is suing Warden Strong in her individual and official capacities. *Id*. at 2. Brookins claims that Strong is violating Brookins's First-, Eighth-, and Fourteenth-Amendment rights by denying her access to the Trust Fund Limited Inmate Computer System's ("TRULINCS") email and video services. *Id*. at 6-9. To support her claims, Brookins alleges the following.

In 2017, Brookins was convicted in the United States District Court for the Middle District of Florida, Case No. 3:16-cr-68-MMH-JRK, of Sex Trafficking by Force, Fraud and Coercion; Conspiracy to Manufacture and Distribute Cocaine Base; and being a Felon in Possession of a Firearm. Doc. 18 at 6; *see also United States v. Brookins*, 793 F. App'x 820 (11th Cir. 2019). When Brookins entered the BOP, classification staff identified her as having a history of unlawful sexual conduct (due to her sex-trafficking offense), and entered an Adam Walsh Act case management assignment ("Walsh CMA"). *Id*. at 6. Consequently, TRULINCS automatically applied a temporary restriction on Brookins's TRULINCS account. *Id*. at 6.

---

[2] Citations to page numbers of Plaintiff's amended complaint are to the numbers assigned by the court's Electronic Case Filing system ("ECF").

On November 1, 2019, Brookins filed a motion in the sentencing court seeking a judicial recommendation that she be granted access to the TRULINCS email system. Doc. 18, Ex. 1. On January 27, 2020, the sentencing judge entered an order recommending that Brookins "be permitted appropriate access to the TRULINCS email system," but cautioned Brookins that "the Bureau of Prisons has final authority and is not obligated to implement any judicial recommendation." Doc. 18, Ex. 1.

In August 2020, Brookins requested that Warden Strong approve access to the TRULINCS email and video visitation services. Doc. 1, Ex. 1. Strong denied Brookins's request as follows:

> This is in response to your Request for Administrative Remedy, received September 17, 2020, wherein you stated, you are requesting to participate in the Trulincs Messaging and Video Visits. For relief, you are requesting access to Trulincs Messaging and Video Visits.
>
> A review of this matter indicates, Program Statement 4500.12, Trust Fund Manual, states "Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of e-mail or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction." In your current offense, Sex Trafficking by Force, Fraud, and Coercion, you placed advertisements on Backpage.com advertising two females for commercial sex acts. Based on your offense, you utilized an electronic device in the commission of your offense.
>
> Based on the above information, this response to your Request for Administrative Remedy is denied.

Doc. 1, Ex. 1.

Brookins appealed to the BOP's Regional Director. The Regional Director denied her appeal on July 21, 2021, explaining:

> This is in response to your Regional Administrative Remedy Appeal receipted March 25, 2021. You allege your personal history does not indicate a propensity to offend through the use of e-mail. As relief, you request access to the TRULINCS system.
>
> Pursuant to Program Statement 4500.12, Trust Fund/Deposit Fund Manual, "Use of TRULINCS is a privilege; therefore, the Warden may limit or deny the privilege of a particular inmate. Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for TRULINCS restriction." A review of your request revealed your current offense conviction involved the use of e-mail, computer, and other media outlets to perpetuate your crime.
>
> The Warden reviews each specific request individually and has determined your criminal history indicates a propensity for you to offend through the use of the TRULINCS system and jeopardizes the safety and security of the public. Therefore, you have been appropriately denied access to the TRULINCS system. You are urged to continue to work with your Unit Team for further assistance and guidance concerning your TRULINCS restriction.
>
> Accordingly, your Regional Administrative Remedy Appeal is denied.

Doc. 18, Ex. 1.

Brookins maintains that she does not fall under the category to which the restriction applies because it "applies to child pornography offenses not sex trafficking." Doc. 18 at 7. Brookins also alleges that she is "entitled to be permitted

TRULINCS email and video access due to the fact that I did not use Backpage.com myself to solicit prostitution. In fact, the victims were adults over the age of 21 and posted Backpage Ads of themselves prior to me being involved with them." *Id*. at 6.

Brookins acknowledges that she is able to communicate with her family and other approved contacts by postal mail and telephone. *Id*. at 7. She also indicates that she is allowed physical visitation except when that (and other) institutional operations are restricted due to COVID-19. *Id*. at 7. Brookins argues that "[i]t would be cruel and harsh punishment to go the next 30 years without being able to see or communicate via video and email with my family," and emphasizes that "there's no indication as to when COVID-19 will end and I will be able to have a physical contact visit with my family again." *Id*. at 8.

Based on the foregoing allegations, Brookins claims that Strong is violating her First-Amendment right to freedom of speech, her Eighth-Amendment right not to be subjected to "cruel, harsh" punishment, and her Fourteenth-Amendment right to due process. *Id*. at 9. As relief, Plaintiff seeks the following: "Requesting that Warden Strong lift my TRULINCS restrictions to permit me email and video access." *Id*. at 9.

## II.  Regulatory Background

TRULINCS is the property of the United States Department of Justice that provides inmates with a computer system. *See* U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 4500.12 § 14.1 at 126 (Mar. 14, 2018). Use of TRULINCS is "a privilege;" therefore, the Warden may limit or deny access to a particular inmate. *Id.*, § 14.2 at 126.

BOP regulations *require* that the Warden prohibit individual inmates' participation in TRULINCS "whenever it is determined to jeopardize the safety, security, or orderly operation of the correctional facility, or the protection of the public and staff." *Id.*, § 14.2 at 126. With regard to the TRULINCS Public Messaging service, Program Statement 4500.12 further provides:

> Due to the "self-service" format TRULINCS provides, all inmates who are physically capable of accessing a TRULINCS terminal should be provided access in all but limited cases. Public Messaging is the only exception to this approach, as it involves communication with persons in the community and the possibility of continuing criminal or other prohibited activity that may jeopardize the safety and security of the institution.

*Id.*, § 14.9 at 130.

An inmate may be excluded from participating in particular TRULINCS services based on the inmate's individual history of behavior that could jeopardize the legitimate penological interests identified above. *Id.*, § 14.9 ¶ a. at 130.

Specifically with regard to sex offenders, Program Statement 4500.12 provides, in relevant part:

> (1) **Sex Offenders**. Inmates whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes the safety, security, orderly operation of the correctional facility, or the protection of the public or staff, should be seriously considered for restriction.

*Id.*, § 14.9 ¶ a.(1) at 130. To aid in this assessment, the Program Statement provides:

> As a method of identifying these inmates, staff responsible for local sex offender management should review inmates with SENTRY CMA Walsh Assignments of Certified, With Conviction, and No Conviction, to determine if their participation in the Public Messaging Service poses a realistic threat. TRULINCS automatically applies a temporary restriction on inmates' accounts with the above SENTRY CMA Walsh Assignments. These restrictions may be over-written when deemed appropriate by staff responsible for local sex offender management and approved by the Warden.

Program Statement 4500.12, § 14.9 at 130.

Program Statement 4500.12 does not embody a categorical exclusion for sex offenders. *Id.* at 130. Rather, BOP officials dedicated to sex offender management individually review every inmate, including Brookins, for TRULINCS services access. It is within those officials' discretion, subject to approval from the warden, to grant access in non-threatening cases.

### III.  STANDARD OF REVIEW UNDER 28 U.S.C. § 1915A

Because Brookins is a prisoner, the District Court is required to review her amended complaint, identify cognizable claims and dismiss the amended complaint, or any portion thereof, if the amended complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). Dismissals for failure to state a claim are governed by the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("[T]he

pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). The amended complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A court also may dismiss a case for failure to state a claim when the complaint's "allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001).

## IV. DISCUSSION

As an initial matter, this Report and Recommendation does not address whether a cause of action could lie under *Bivens*, because Brookins is seeking only injunctive relief. Doc. 18 at 9. *See Bivens,* 403 U.S. at 392, 396-97; *Egbert v. Boule,* 596 U.S. ___, 142 S. Ct. 1793, 1799 (2022) (noting that plaintiffs may bring a *Bivens* action in a discrete set of cases).

### A. *Brookins's Amended Complaint Fails to State A Plausible Claim under the First Amendment's Free Speech Clause*

Brookins claims that Strong's restriction of her access to TRULINCS email and video services violates the First Amendment's Free Speech Clause.[3] Doc. 18 at 9.

Because Brookins is a prisoner, she does not have an unfettered First-Amendment right to use the TRULINCS email and video services. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). Particularly with regard to the First Amendment, the Supreme Court has explained:

> In the First Amendment context a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with h[er] status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the

---

[3] Brookins's initial complaint asserted that the email and video restriction also violated her First-Amendment right to freedom of association. Doc. 1 at 7. Brookins abandoned that claim in her amended complaint after the undersigned outlined the deficiencies in that claim and provided her an opportunity to amend. Doc. 15; *See Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir. 1994) ("[I]nmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives."); *Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir. 1987) (same).

corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Pell*, 417 U.S. at 822.

Prison officials may restrict an inmate's speech/correspondence as long as the restriction "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). That inquiry focuses on whether the restriction "has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton*, 539 U.S. at 132 (quoting *Turner*, 482 U.S. at 89-91). The first of these four factors (the rational connection to a legitimate interest) is the principal factor:

> To be quite clear, we do not balance these factors to see if some outweigh the others. The last three factors are valuable because they provide more angles from which to view the fundamental inquiry: whether the prison regulation is reasonably related to legitimate penological interests. If that rational connection is missing, the regulation fails, irrespective of whether the other factors tilt in its favor. And if the connection exists, the [restriction] will stand.

*Rodriguez v. Burnside*, No. 20-11218, ___ F.4th ___, 2022 WL 2352448, at *3 (11th Cir. June 30, 2022) (internal quotation marks and citations omitted).

Brookins's pleadings do not plausibly allege that Warden Strong's restriction is invalid. *See Overton*, 539 U.S. at 132 (holding that the burden "is not on the

[Government] to prove the validity of prison regulations but on the prisoner to disprove it."); *Rodriguez*, 2022 WL 2352448, at *3 ("To succeed on a constitutional claim, an inmate must show that 'the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.'" (quoting *Turner*, 482 U.S. at 89-90)).

Strong and the Regional Director restricted Brookins's access to email and video based on their determination that her offense conduct indicated a propensity for her to offend through the use of the TRULINCS Public Messaging system, and because allowing her access jeopardized the safety and security of the public. That is a "valid, rational connection" between the restriction and the legitimate penological interests of crime deterrence, prisoner rehabilitation, and the protection of the public. *Turner*, 482 U.S. at 89; *Pell*, 417 U.S. at 822-23 (recognizing as legitimate penological objectives the deterrence of crime, the protection of the public, the rehabilitation of the prisoner, and the security of the prison).

Brookins argues that with respect to her criminal conduct, the victims—not Brookins personally—posted advertisements on a website to solicit commercial sex customers. *See* Doc. 18 at 6; Doc. 1, Ex. 1. Prison officials reasonably could conclude that that is a distinction without a difference given that Brookins's offense conduct involved her *forcing* and *coercing* her victims to submit to commercial sex

acts. *See* 18 U.S.C. § 1591(a) (defining the crime of Sex Trafficking by Force, Fraud, and Coercion); *United States v. Brookins*, 793 F. App'x 820 (11th Cir. 2019) (describing Plaintiff's offense conduct and sentencing factors); *see also* Case No. 3:16-cr-06-MMH-JRK, Doc. 71 (M.D. Fla. Oct. 28, 2017) (Sentencing Tr.). Brookins also does not contend that she does not know how to post advertisements to advertise victims for commercial sex acts or other crimes.

Additionally, Brookins's allegations confirm that alternative means of correspondence remain open to her. For example, Brookins admits that she may communicate with others through the U.S. mail and the telephone. This further cuts against Brookins's claim that the restriction violates her right to freedom of speech. "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner*, 482 U.S. at 90 (internal quotation marks and citations omitted).

Because Brookins's pleadings demonstrate that the restriction on her access to TRULINCS email and video services is reasonably related to legitimate penological interests, she fails to state a plausible claim that the restriction violates the First Amendment.

**B.**     ***Brookins's Amended Complaint Fails to State A Plausible Claim under the Fifth Amendment's Due Process Clause***

Brookins claims that Strong's denial of email and video access violates her right to due process. Doc. 18 at 9; *see also* U.S. Const. Amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law.").

Brookins's claim fails for three reasons. First, her claim is conclusory. Brookins states that she has been denied due process, but she provides no specific facts to support her conclusion. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Second, the Eleventh Circuit has rejected "substantive" due-process claims based on the denial or restriction of an inmate's visitation privileges. *See Charriez v. Sec'y, Fla. Dep't of Corr.*, 596 F. App'x 890, 894 n.4 (11th Cir. 2015).

Third, Brookins does not have a protected liberty interest in email or video services through TRULINCS. *See, e.g., Caraballo-Sandoval*, 35 F.3d at 525; *Charriez*, 596 F. App'x at 895 ("The Supreme Court has held that an inmate does not have a liberty interest in or right to 'unfettered visitation' and thus denial of visitation is not protected by the Due Process Clause." (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989))). And even if Brookins had a constitutionally-protected liberty interest, her pleadings demonstrate that she received sufficient process regarding the deprivation. "The essence of due process

is an opportunity to be heard at a meaningful time and in a meaningful way." *Sharma v. Drug Enforcement Agency*, 511 F. App'x 898 902 (11th Cir. 2013) (citing *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009)). The BOP's administrative grievance procedure—which Brookins utilized—has provided her with sufficient procedural safeguards.

For all of the foregoing reasons, Brookins's amended complaint fails to state a plausible claim that the restriction violates the Due Process Clause.

### C. *Brookins's Amended Complaint Fails to State A Plausible Conditions-of-Confinement Claim under the Eighth Amendment*

Brookins claims that "[i]t would be cruel and harsh punishment to go the next 30 years without being able to see or communicate via video and email with my family." Doc. 18 at 8. Brookins admits that she is allowed postal mail and telephone communication, and that she also qualifies for visits from her friends and family when COVID-19 restrictions are lifted.

The Eighth Amendment's prohibition against cruel and unusual punishments prohibits the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). An Eighth-Amendment conditions-of-confinement claim "requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable

state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"The Supreme Court has set a high bar for the objective component of a claim challenging a condition of confinement." *Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas*, 614 F.3d at 1304 (quoting *Hudson*, 503 U.S. at 9); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes*, 452 U.S. at 347).

Brookins's allegations do not plausibly show that the restriction on her email and video access is "unnecessary and wanton," or "sufficiently grave" to form the basis of an Eighth-Amendment violation. To the contrary, her amended complaint demonstrates that the restriction is justified by valid penological concerns and that she enjoys regular access to other forms of correspondence/visitation. Because

Brookins has not shown that she is being denied "the minimal civilized measure of life's necessities," her Eighth-Amendment claim fails.

## V. Conclusion

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** under 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted.

2. The clerk of court be directed to close this case file.

At Pensacola, Florida, this <u>11th</u> day of July, 2022.

                              /s/ *Michael J. Frank*
                              **Michael J. Frank**
                              **United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**